UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:21-CR-37-HAB |
| ) | |
| DAVID HUESTON ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Houston, we have a problem.[1] So said the astronauts of Apollo 13 to NASA Mission Control after an explosion crippled their spacecraft during their 1970 spaceflight. Defendant David Hueston (Hueston) has a far different problem. He's facing gun and drug charges in a three-count federal indictment after police executed a search warrant at his apartment and found both. Before the Court is Hueston's Motion to Suppress this evidence (ECF No. 20) and his request for a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978) (ECF No. 21), filed on September 21, 2021. In his motions, Hueston challenges the probable cause for issuance of the search warrant and challenges the veracity of the averments in the search warrant affidavit (ECF No. 21-1). The Government responded in opposition on October 6, 2021, to which the Defendant replied on October 15, 2021. Because the Court finds that Hueston has met his burden for a hearing under *Franks*, the Motion for a Franks Hearing will be GRANTED. The Motion to Suppress will remain under advisement pending the hearing and supplemental briefing.

## SEARCH WARRANT AFFIDAVIT

---

[1] This phrase, while popular, is an erroneous quotation from the Apollo 13 astronauts. The actual quotation is "Houston, we've had a problem." Six Astronaut Quotes from Milestone NASA Missions (kennedyspacecenter.com)

On February 12, 2021, Detective Michael Ross of the Marion Police Department JEAN Team Drug Task Force ("the Task Force") obtained a search warrant for a second-floor apartment inside a "yellow two-story multi-family dwelling" located at 10-- W. 5th Street, Marion, Indiana ("the duplex"). (ECF No. 21-1 at 5). The search warrant was supported by Detective Ross' affidavit, a four-page summation of the investigation involving the upper floor of the duplex. (ECF 21-1 at 1-4). The affidavit begins with a recitation of Detective Ross' training and expertise in investigating narcotics sales and distribution. Through his 13 years of experience, Detective Ross averred that he has knowledge that illegal narcotics dealers: (1) keep narcotics in their residence; (2) use safes and lockboxes to hold the narcotics or proceeds from sales; (3) communicate through cellular phones via text to arrange transactions; (4) deal in multiple forms of illegal narcotics; and (5) keep firearms and ammunition in their residence.

Specific to this investigation, Detective Ross averred that on February 11, 2021, the Task Force received an anonymous tip from a Marion, Indiana, resident identifying Hueston as a methamphetamine and heroin trafficker. The tipster provided the Task Force with the address 10— W. 5th St., Marion, Indiana, and told members of the Task Force that from the front of the duplex, Hueston's apartment is on the second floor. The apartment is accessed through the left entry door which leads to stairs to the apartment. Based on this information, officers believed there was one apartment upstairs and one downstairs. The tipster stated that Hueston had 3 pounds of methamphetamine in the residence, he sells it "by the ball" (3.5 grams at a time), and he usually carries a gun and has pistols in the apartment. Finally, the Task Force was told that Hueston has multiple vehicles but drives a green Mini Cooper.

Later in the evening after receiving this information, the Task Force deployed a stationary camera in the area of Grove Street, west of the duplex, to view the rear of the residence. The next

2

day, the Task Force began visual surveillance of the front of the duplex while monitoring the footage from the stationary camera in real time. According to the affidavit, detectives observed a constant flow of foot traffic at the entrance and observed people and vehicles coming and going in short time intervals. The affidavit does not indicate whether officers made any attempt to identify the individuals or vehicles coming and going.

Officers tried to stop one vehicle after it left the residence, but the stop did not succeed. When officers returned to the area, they observed the green Mini Cooper arrive. No information is provided in the affidavit confirming ownership of the Mini Cooper; there is no information about the driver of the Mini Cooper or any occupants; and there is no information about whether anyone exited the Mini Cooper. Rather, the only information in the Affidavit is that the Mini Cooper arrived at the residence.

A short time later, a black truck bearing Indiana Registration "RGTREE" arrived at 10—W. 5th Street. A male left the vehicle and entered through the left entry door. The same male exited the residence and returned to the truck. Officers then followed the truck, observed a traffic infraction, and initiated a traffic stop. During the traffic stop, Deputy Josh Treon of the Grant County Sheriff's Department conducted a free air sniff with his K9 partner, who alerted to the odor of narcotics from the vehicle. Inside the vehicle, Deputy Treon located 21 grams of a crystal-like substance, 1 gram of a dark brown powder, and 1 gram of a green leafy substance. These substances field tested positive for methamphetamine, opiates, fentanyl, and marijuana.

From this affidavit Grant Superior Court Judge Jeffrey Todd found probable cause to issue the warrant authorizing the search of the second-floor apartment for evidence of drug trafficking activity. Officers executed the warrant shortly after it was issued and located 1280 grams of

methamphetamine, 225 grams of heroin, over $10,000 in United States currency, additional controlled substances and a firearm.

## DISCUSSION

Search warrant affidavits are presumed to be valid. *Franks*, 438 U.S. at 171. But a search warrant is invalid if police officers obtain it by deliberately or recklessly providing the issuing court with false, material information. *United States v. McMurtrey*, 704 F.3d 502, 504 (7th Cir. 2013). In *Franks*, the Supreme Court defined the procedure, evidentiary burdens and proper remedies associated with a defendant's attack on the truthfulness of statements made in an affidavit supporting the issuance of a search warrant. To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing" of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth. *McMurtrey*, 704 F.3d at 508. *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014); *see also*, *e.g.*, *United States v. Hancock*, 844 F.3d 702, 708 (7th Cir. 2016); *United States v. Mullins*, 803 F.3d 858, 861–62 (7th Cir. 2015); *United States v. Robinson*, 546 F.3d 884, 887–88 (7th Cir. 2008). Merely to obtain a *Franks* hearing, however, a defendant need not prove the *Franks* violation. "Proof by a preponderance of the evidence is not required until the *Franks* hearing itself." *Glover*, 755 F.3d at 820. However, allegations of falsehood or reckless disregard for the truth must be "accompanied by an offer of proof." *Franks*, 438 U.S. at 171.

"When as here, the affidavit is the only evidence presented to the warrant-issuing [judge], the warrant must stand or fall solely on the contents of the affidavit." *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002). Hueston challenges the issuance of the search warrant on two grounds. First, he argues that the search warrant was issued without probable cause. As his argument goes, the warrant affidavit contained uncorroborated hearsay from an anonymous tipster and there was no evidence of drug buys or proof of drug activity at the apartment during the Task Force's

4

surveillance to support a finding of probable cause. Second, he asserts that the affidavit included material misrepresentations and omitted information that would have been relevant to the judge's probable cause determination.

For sure, the affidavit submitted to the judge is remarkable. But, as Hueston points out, it is remarkable for its omissions. There is no information about the reliability of the anonymous tipster; no time frame for when the tipster acquired the knowledge provided to officers, no context for how the tipster obtained the information, and no independent verification of the information provided – such as proof of Hueston's residence (perhaps a trash pull), vehicle registration, a description of Hueston, or even any observations of him entering the duplex. There is no information about whether the informant could predict actions of Hueston. And there is no information about how officers were in contact with the tipster, if he had been involved with law enforcement in the past, or if he was currently under investigation by law enforcement.[2] At no time did officers observe drugs at the residence; there were no controlled buys; and although they located drugs in the traffic stop of the black truck, the affidavit provides no confirmation that the occupant received the drugs from Hueston or his second-floor apartment. These omissions alone give the Court pause about the probable cause finding, even with the presumption of validity that accompanies search warrants. *See United States v. Cherry,* 920 F.3d 1126, 1134 (7th Cir. 2019) (citing *Illinois v. Gates*, 462 U.S. 213, 245–46 (1983) ("The ability of an informant to predict future actions of others with specificity is one indicator of reliability."); *United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011) (when the probable cause analysis rests on a tip, the court should assess: "first, the degree to which the informant acquired knowledge of the events through

---

[2] There was information in the affidavit that the informer stated that "Hueston has shown them a handgun in the past at that residence." However, that is the only information provided as to how the informer knows about the facts he relayed to law enforcement.

5

firsthand observation; second, the detail and specificity of the information provided by the informant; third, the interval between the date of the events and a police officer's application for the search warrant; and fourth, the extent to which law enforcement corroborated the informant's statements."); *United States v. Lopez*, 907 F.3d 472, 483 (7th Cir. 2018) (informant who later disappeared was not reliable and "[t]he officers' observations that day [of the arrest] did not corroborate, even roughly, the informant's story.").

What is more troubling and necessitates the *Franks* hearing is the knowledge Detective Ross appeared to have but failed to impart in his affidavit. As Hueston points out, the affiant was aware of foot traffic coming to and from the house. Yet there is no information about the identities of these individuals. Hueston submits his own affidavit identifying the individuals he observed in the surveillance videos provided in discovery and conveys that at least some individuals resided in the duplex, including his roommate and his neighbor. (ECF No. 21-8). The Defendant submits the report of Detective Leland Smith in which he writes that "people that were coming and going seemed to be working on a brown in color Ford Explorer 4 door pickup truck that was parked on Grove Street in the back." (ECF No. 21-4). Detective Smith states that he and Detective Ross "talked on the Police radio about the activity." (*Id.*). Finally, Hueston provides a video (ECF No. 22) of the surveillance and asserts in his brief that one individual was moving out of the duplex and his father arrived to load items into a truck, the person working on the brown Ford Explorer pickup truck took four tires into the duplex, and a female was driving the green Mini Cooper to and from the apartment several times during the day.

The Government asserts that the frequent comings and goings of individuals to the duplex corroborated the tipster's information that drugs were being sold from the apartment and thus the probable cause finding was accurate. The Court is not so convinced. To the extent there was a non-

criminal explanation for the comings and goings at the house that the affiant was aware of but failed to disclose to the judge, such non-disclosure may have been material to the probable cause finding. Indeed, it would not, on its face, be suspicious for individuals living in the neighboring apartment to be coming and going from their apartment. Nor would individuals working on a vehicle suggest illegal activity.

So, too, the layout of the entrance to the duplex may not have been accurately communicated in the affidavit. The judge was not provided any photographs of the entrance to the duplex. Hueston has provided photographs which suggest that the officers could only view the entrance and not whether individuals entering the entrance went up the stairs to the second-floor apartment. (ECF No. 21-2 at 1-10). Rather, Detective Ross may have assumed that entry into the left door meant that an individual was entering the second-floor apartment. But there are no observations or personal accounts from Detective Ross identifying anyone making their way up the steps to the second-floor apartment.

Finally, Hueston submits still photographs from the pole surveillance camera of the Mini Cooper arriving at the duplex (ECF No. 27-1, at 1-8). Hueston asserts that the photos show two people arrived in the Mini Cooper, a female exited the driver side and a male, who is not Hueston, exits the passenger side. Hueston provides a photograph of himself as more evidence that the person in the Mini Cooper was not him and thus, he was not viewed by officers in or around the Mini Cooper. (ECF No. 27-2). When Detective Ross states in his affidavit that he "observed the Mini Cooper that Hueston is believed to be driving arrive," Hueston asserts that Detective Ross intentionally misled the judge to believe that he was driving the vehicle.

Only if the defendant can make a substantial preliminary showing that the affiant acted intentionally or recklessly will a court grant a motion for a *Franks* hearing. *United States v.*

*Whitley,* 249 F.3d 614, 620 (7th Cir. 2001). "Because states of mind must be proved circumstantially, a fact finder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Id.* at 621 (citing *United States v. Williams,* 737 F.2d 594 (7th Cir.1984)) (internal quotation marks omitted). Hueston has offered proof sufficient to meet the substantial preliminary showing required to grant a *Franks* hearing. From the circumstantial evidence presented, Hueston has questioned the veracity and completeness of the affidavit submitted to the judge. Further, given the bare bones nature of the probable cause finding from the four corners of the affidavit, the veracity of the affidavit is crucial to whether the judge would have found probable cause if presented with accurate and complete facts about the officers' surveillance. *Glover*, 755 F.3d at 820; *United States v. Kimberlin,* 805 F.2d 210, 252 (7th Cir.1986) (an omission is material if it has significance and could have reasonable affected the probable cause finding). Thus, the Court GRANTS Hueston's request for a *Franks* hearing.[3]

## CONCLUSION

The Defendant's request for a *Franks* hearing (ECF No. 21) is GRANTED. The Court will set the hearing through a separate entry. The Defendant's Motion to Suppress (ECF No. 20) will remain under advisement.

SO ORDERED on November 10, 2021.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT JUDGE

---

[3] The Government also argues that the good-faith exception applies to validate the search and permit the evidence seized to be used at trial. *United States v. Leon*, 468 U.S. 897(1984). However, the Court cannot address that argument until after the *Franks* hearing is held and the Court determines whether a *Franks* violation has occurred. The *Leon* good faith exception does not apply when there is a *Franks* violation. *See United States v. Leon*, 468 U.S. at 923 (listing a *Franks* violation as one of four circumstances under which the good faith exception does not apply); *United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020) (same) (quoting *Leon*, 468 U.S. at 923).

8