UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>   Plaintiff, )<br>  )<br> v. )<br>  )<br> DAVID HUESTON )<br>  )<br>   Defendant. ) | Cause No. 1:21-CR-37-HAB |

**OPINION AND ORDER**

"The Eagle has landed." With those words from astronaut Neil Armstrong an era ended. President John F. Kennedy's mission to put humans on the Moon[1] had succeeded. With this Opinion and Order, the Defendant's quest to suppress the gun and drug evidence discovered after the search of his apartment is also coming to its end, not so successfully.

Before the Court is Defendant's Motion to Suppress evidence (ECF No. 20). The Court took the motion under advisement pending a *Franks* hearing and supplemental briefing. (ECF No. 28). Following the *Franks* hearing (ECF No. 31), preparation of a transcript (ECF No. 33), and briefing (ECF Nos. 36, 38, 39), the Motion is now ripe for consideration. Because the Court finds that no *Franks* violation occurred and the good faith exception applies to the officers executing the warrant, the Motion to Suppress will be DENIED.

**DISCUSSION**

A *Franks* hearing enables a defendant to challenge the factual basis on which a search warrant was issued. *Franks v. Delaware,* 438 U.S. 154 (1978). To "invalidate a warrant on this

---

[1] Whether Earth's nearest celestial neighbor should be capitalized or not is a subject of debate. NASA capitalizes it in their style guide while the Associated Press (AP) style book does not. A capital debate: Should Earth's natural satellite be 'Moon' or 'moon'? | Space

basis, a defendant at a so-called *Franks* hearing must prove by a preponderance of the evidence either falsity or recklessness, as well as materiality." *United States v. Clark*, 935 F.3d 558, 563 (7th Cir. 2019). When a Franks hearing has been granted, the district court is "required to first determine whether the defendant has shown by a preponderance of the evidence that the false information was provided intentionally or recklessly, and if so, whether the affidavit, stripped of the false information, is nevertheless sufficient to establish probable cause." *United States v. Spears*, 673 F.3d 598, 604 (7th Cir. 2012).

    A.  **Search Warrant Affidavit**

Familiarity with the underlying facts recited from this Court's Opinion and Order granting the *Franks* hearing request (ECF No. 28) is assumed. Even so, the Court will duplicate the facts here for completeness. *United States v. Hueston*, 2021 WL 5231734, at *1 – 2 (N.D. Ind. Nov. 10, 2021).

### SEARCH WARRANT AFFIDAVIT

On February 12, 2021, Detective Michael Ross of the Marion Police Department JEAN Team Drug Task Force ("the Task Force") obtained a search warrant for a second-floor apartment inside a "yellow two-story multi-family dwelling" located at 10-- W. 5th Street, Marion, Indiana ("the duplex"). (ECF No. 21-1 at 5). The search warrant was supported by Detective Ross' affidavit, a four-page summation of the investigation involving the upper floor of the duplex. (ECF 21-1 at 1-4). The affidavit begins with a recitation of Detective Ross' training and expertise in investigating narcotics sales and distribution. Through his 13 years of experience, Detective Ross averred that he has knowledge that illegal narcotics dealers: (1) keep narcotics in their residence; (2) use safes and lockboxes to hold the narcotics or proceeds from sales; (3) communicate through cellular phones via text to arrange transactions; (4) deal in multiple forms of illegal narcotics; and (5) keep firearms and ammunition in their residence.

Specific to this investigation, Detective Ross averred that on February 11, 2021, the Task Force received an anonymous tip from a Marion, Indiana, resident identifying Hueston as a methamphetamine and heroin trafficker. The tipster provided the Task Force with the address 10—W. 5th St., Marion, Indiana, and told members of the Task Force that from the front of the duplex, Hueston's apartment is on the second floor. The apartment is accessed through the left entry door which leads to stairs to the apartment. Based on this information, officers believed there was one apartment upstairs and one downstairs. The tipster stated that Hueston had 3 pounds of methamphetamine in the residence, he sells it "by the ball" (3.5 grams at a time), and he usually carries a gun and has pistols in the apartment. Finally, the Task Force was told that Hueston has multiple vehicles but drives a green Mini Cooper.

Later in the evening after receiving this information, the Task Force deployed a stationary camera in the area of Grove Street, west of the duplex, to view the rear of the residence. The next day, the Task Force began visual surveillance of the front of the duplex while monitoring the footage from the stationary camera in real time. According to the affidavit, detectives observed a constant flow of foot traffic at the entrance and observed people and vehicles coming and going in short time intervals. The affidavit does not indicate whether officers made any attempt to identify the individuals or vehicles coming and going.

Officers tried to stop one vehicle after it left the residence, but the stop did not succeed. When officers returned to the area, they observed the green Mini Cooper arrive. No information is provided in the affidavit confirming ownership of the Mini Cooper; there is no information about the driver of the Mini Cooper or any occupants; and there is no information about whether anyone exited the Mini Cooper. Rather, the only information in the Affidavit is that the Mini Cooper arrived at the residence.

A short time later, a black truck bearing Indiana Registration "RGTREE" arrived at 10—W. 5th Street. A male left the vehicle and entered through the left entry door. The same male exited the residence and returned to the truck. Officers then followed the truck, observed a traffic infraction, and initiated a traffic stop. During the traffic stop, Deputy Josh Treon of the Grant County Sheriff's Department conducted a free air sniff with his K9 partner, who alerted to the odor of narcotics from the vehicle. Inside the vehicle, Deputy Treon located 21 grams of a crystal-like substance, 1 gram of a dark brown powder, and 1 gram of a green leafy substance. These substances field tested positive for methamphetamine, opiates, fentanyl, and marijuana.

From this affidavit Grant Superior Court Judge Jeffrey Todd found probable cause to issue the warrant authorizing the search of the second-floor apartment for evidence of drug trafficking activity. Officers executed the warrant shortly after it was issued and located 1280 grams of methamphetamine, 225 grams of heroin, over $10,000 in United States currency, additional controlled substances and a firearm.

**B.** *Franks* **Hearing**

Detective Ross testified at the hearing. (Evid. Hr'g Tr., ECF No. 33, "Tr. at __"). It came as no surprise that his testimony confirmed omissions and at least one misstatement in his affidavit. Among the omissions gleaned from his testimony were:

- the anonymous tipster was not anonymous and may have been in the somewhat grey area between a "tipster" and an "informant." Detective Ross testified he had a name of the individual providing the tip (Tr. at 32) and he offered the tipster money when the tipster provided the information (Tr. at 55);[2]

- the tipster was addicted to methamphetamine and supplied information about Hueston because he wanted to stop using methamphetamine (Tr. at 33-34);

---

[2] The tipster was offered money for his assistance but was not paid until a week or so after the warrant was executed. Detective Ross testified that he did not make the decision on how much to pay the tipster until after the warrant was executed.

4

- the tipster had criminal history that included theft, domestic battery, various alcohol related offenses and resisting law enforcement between 2006 and 2015 (Tr. at 35-36);

- Detective Ross (accompanied by two other officers) met with the tipster in a recorded meeting. During the meeting the tipster showed them Hueston's picture on Facebook (Tr. at 41);

- the tipster described for officers that he had observed a softball sized bag of heroin in the house. (Tr. at 68);

- the tipster, along with the officers, drove by Hueston's apartment and viewed the Mini Cooper the tipster had said Hueston drove (Tr. at 62);

- the officers ran the Mini Cooper's license plate and it returned to a 2012 Hyundai registered to Michelle Farannte (Tr. at 59);

- the tipster said he had been in Hueston's apartment 3-4 days before he spoke to officers and he had seen a scale, syringes, and a large "wad" of cash (Tr. at 113);

- after the pole camera was set up to observe the goings on at the duplex and throughout their surveillance, officers never observed Hueston at the duplex nor did they observe him driving the Mini Cooper (Tr. at 79, 128);

- footage from the pole camera was never reviewed before obtaining the search warrant (Tr. at 79, 94);

- visual surveillance occurred in two intervals between 4:00-5:30 pm and 7:00 to 8:50 pm. Detective Ross observed four individuals approach the duplex, one individual was working on a truck in the rear of the duplex, and there were workers working on a house across the street. Some individuals had been at the duplex multiple times during the day (Tr. at 139).

- the driver of the black truck that the officers pulled over after leaving the duplex was Randall Gregory, a known drug user and dealer in Grant County (Tr. at 69, 137)

As for misstatements, defense counsel elicited one such statement from Detective Ross. Detective Ross admitted that while he wrote in the affidavit that a male in a black truck with license plate RGTREE arrived at the duplex "and went into the left entry door," he did not observe him go into the left entry door. (Tr. at 136). In Detective Ross' own words, this statement was "wrong." (*Id.*).

5

### C. Alleged *Franks* Violation

If a defendant at a *Franks* hearing establishes by a preponderance of the evidence that the false statements or omissions were made intentionally or with reckless disregard for the truth, and without the false material the affidavit's remaining content cannot establish probable cause, the search warrant is invalid and the fruits of the search must be excluded from evidence. *Franks v. Delaware,* 438 U.S. at 156. Hueston asserts that he satisfied the preponderance of the evidence standard for finding a *Franks* violation based on the intentional omissions and misstatements above. He also creates a hypothetical affidavit with this information in it and contends that the Court should accept this to conclude that probable cause would not have existed if complete and truthful information had been presented to Judge Todd.

For its part, the Government does not quibble with Hueston that information was omitted and mistakes were made by Detective Ross in the drafting of the affidavit. The Government argues that this is the nature of a quickly developing investigation and the affidavit, even if a bare-bones recitation of the facts, contained truthful information and no intent to mislead the judge. It also contends that much of the omitted or misstated information was either immaterial to the probable cause determination or would have further cemented the probable cause determination made by the judge.

Having heard and examined the testimony of Detective Ross, the Court agrees with both Hueston and the Government that there were multiple omissions and one misstatement in the probable cause affidavit submitted to Judge Todd. What the Court cannot cede to Hueston is that he has shown by a preponderance of the evidence that those omissions were made recklessly or intentionally. Nor can the Court conclude that under the "totality of the circumstances" standard

applicable in determining the existence of probable cause that inclusion of the omitted or misstated information would have altered the probable cause determination.

Warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca,* 380 U.S. 102, 108 (1965). For this reason, "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *United States v. Colkley,* 899 F.2d 297, 300 (4th Cir. 1990). *Franks* does not protect against *all* omissions in the affidavit; it protects only against material omissions, meaning omissions *designed to mislead,* or that are made in *reckless disregard of whether they would mislead,* a judicial officer's probable cause determination. *See Clark,* 935 F.3d at 563 ("Our cases do not hold that a *Franks* hearing is required every time some substantial adverse information about an informant's credibility is omitted from a probable cause affidavit.").

Having observed Detective Ross' testimony, the Court finds his testimony credible. For many of the omitted facts, Detective Ross had a reasonable and fair explanation for their omission. *See United States v. Glover*, 755 F.3d 811, 821 (7th Cir. 2014) (government permitted to offer explanations for the omission of information from an affidavit at the *Franks* hearing itself). For instance, Detective Ross testified based on his training and experience, the tipster appeared to be a meth user, "but not to the point of someone I would never use as an informant or getting information from." (Tr. at 54). Detective Ross testified that he did not observe any indication that the tipster was under the influence or any mental defect when he provided him with information. (*Id.*: "I would say he was of his sound mind. He was still able to communicate and answer questions…"). Thus, it is arguable whether the tipster's meth addiction was material information that needed to be presented to the judge. *United States v. Scott,* 610 F.3d 1009, 1015 n.2 (8th Cir. 2010) (finding that the defendant made no showing that the drug use of the informants "affected

7

their ability to provide accurate information or otherwise impacted the probable cause finding"). There is also nothing suggesting that the information was deliberately or recklessly omitted to alter the judge's determination. *See United States v. Garey,* 329 F.3d 573, 577–78 (7th Cir. 2003) (finding that the defendant failed to show that the officer deliberately or reckless omitted information about the informant's drug use).

Similarly, Detective Ross testified that the tipster's dated theft conviction was not material to his assessment of his credibility. (Tr. at 55). He testified that he provided this information to the prosecutor and that typically crimes of dishonesty that are more than 5 years old did not impact the prosecutor's determination of credibility. (*Id.*). Hueston has not shown that this information was a calculated or deliberate omission, especially given its presentation to the prosecutor who gave it little weight when reviewing the affidavit. Further, when weighed against the other information in the affidavit, the omission of the tipster's prior theft conviction did not affect the determination of probable cause.

Hueston also asserts that Detective Ross misled the issuing judge by writing that the officers' visual surveillance observed "constant foot traffic" consistent with drug trafficking activities without first confirming whether any of the individuals observed had legitimate reasons to be there. As it turns out, Detective Ross acknowledged that the same few people were observed coming and going during the surveillance and innocent explanations could have existed for why the individuals were at the duplex – two of them lived there, one was working on a car, and one was Hueston's girlfriend. (Tr. at 139). While this may not be ideal police work, "the Fourth Amendment doesn't require that an applicant for a search warrant include all facts that could support an innocent explanation for the apparently less innocent facts recited in the affidavit." *United States v. Simon*, 2010 WL 3980310, at *6 (N.D. Ind. Oct. 8, 2010); *United States v.*

8

*Rambis,* 686 F.2d 620, 623 (7th Cir.1982) (affidavit "need only allege specific facts establishing a reasonable probability that the items sought are likely to be at the location designated; [it] need not also negate every argument that can be asserted against that probability."); *see also United States v. Carmel,* 548 F.3d 571, 577 (7th Cir.2008) (affidavit described illegal use for object but omitted reference to a legal use for the same object; *Franks* hearing properly denied); *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985) ( "The fact that an innocent explanation may be consistent with the facts alleged ... does not negate probable cause."). Because in Detective Ross' judgment and experience frequent comings and goings from a suspected drug dealer's residence tracks drug trafficking activity, it was not misleading to omit this information from the affidavit. Nor does this omission signal an intent to mislead the judge.

Finally, much of the remaining omitted information may have altered the probable cause determination, but it did so to the Defendant's detriment. That Detective Ross recorded his initial interaction with the tipster lends credibility to the interaction. Similarly, the fact that the tipster stated he had been in the duplex to purchase meth in eight ball quantities three to four days prior further supports the veracity of his statements to Detective Ross. Although the tipster was incorrect about the owner, or even the driver of the Mini Cooper, it matters little. The tipster identified the Mini Cooper at the duplex where he had bought methamphetamine. He provided the address where he bought meth, specified he went to the second floor of the duplex to buy the meth, he described items he observed inside the apartment (scale, cash, drugs), and he identified Hueston's picture on Facebook for the officers as the individual who sold him meth. Had these facts been included in the affidavit, that would be the ball game. The Court would not be assessing whether probable cause existed to search Hueston's apartment because all that information would have bolstered the issuing judge's probable cause determination. *United States v. Cioni*, 649 F.3d 276, 286 (4th Cir.

2011) (holding *Franks* is inapplicable when inclusion of the omitted facts would not have changed the probable cause calculus....").

In sum, then, the Court finds that Hueston has not shown a *Franks* violation by a preponderance of the evidence.

### D. Probable Cause

Having found no *Franks* violation, this Court defers to the warrant-issuing judge's determination of probable cause if there is substantial evidence in the record to support the decision. *United States v. Koerth,* 312 F.3d 862, 865 (7th Cir. 2002). When an affidavit is the only evidence presented to a judge to support a search warrant, as it is here, the validity of the warrant hinges on the strength of the affidavit. *United States v. Orozco*, 576 F.3d 745, 748 (7th Cir. 2009). A search warrant affidavit establishes probable cause when, based on the totality of circumstances, it "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005) (citing *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (ellipsis and brackets omitted).

In this Court's initial Opinion and Order it raised concerns about whether Detective Ross' affidavit contained sufficient probable cause that contraband or evidence would be found in a particular place. Indeed, the Court observed:

> There is no information about the reliability of the anonymous tipster; no time frame for when the tipster acquired the knowledge provided to officers, no context for how the tipster obtained the information, and no independent verification of the information provided – such as proof of Hueston's residence (perhaps a trash

>pull), vehicle registration, a description of Hueston, or even any observations of him entering the duplex. There is no information about whether the informant could predict actions of Hueston. And there is no information about how officers were in contact with the tipster, if he had been involved with law enforcement in the past, or if he was currently under investigation by law enforcement. At no time did officers observe drugs at the residence; there were no controlled buys; and although they located drugs in the traffic stop of the black truck, the affidavit provides no confirmation that the occupant received the drugs from Hueston or his second-floor apartment. These omissions alone give the Court pause about the probable cause finding, even with the presumption of validity that accompanies search warrants. *See United States v. Cherry,* 920 F.3d 1126, 1134 (7th Cir. 2019) (citing *Illinois v. Gates*, 462 U.S. 213, 245–46 (1983) ("The ability of an informant to predict future actions of others with specificity is one indicator of reliability."); *United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011) (when the probable cause analysis rests on a tip, the court should assess: "first, the degree to which the informant acquired knowledge of the events through firsthand observation; second, the detail and specificity of the information provided by the informant; third, the interval between the date of the events and a police officer's application for the search warrant; and fourth, the extent to which law enforcement corroborated the informant's statements."); *United States v. Lopez*, 907 F.3d 472, 483 (7th Cir. 2018) (informant who later disappeared was not reliable and "[t]he officers' observations that day [of the arrest] did not corroborate, even roughly, the informant's story.").

(ECF No. 31 at 5-6, footnotes omitted).

The evidence adduced at the *Franks* hearing has done little to dispel the Court's skepticism. While not all the facts in the affidavit need be perfect, the Court continues to struggle with whether the facts in Detective Ross' affidavit support the judge's determination that, under the totality of the circumstances, evidence of a drug-trafficking crime would be located at the duplex. The Court could wax poetic about probable cause not being susceptible to precise definition, *Ornelas v. United States,* 517 U.S. 690, 698 (1996), or that it is a flexible standard that simply "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity" *Illinois v. Gates*, 462 U.S. 213, 243 (1983), but, ultimately, whether this Court finds the probable cause determination sound or not makes no difference to the outcome here. Because the Court finds that even if probable cause is lacking, the good faith exception saves the warrant, it need not

make a specific finding on probable cause. *See United States v. Matthews,* 12 F.4th 647, 654 (7th Cir. 2021) ("it is often preferable to consider whether a warrant is supported by probable cause before addressing the officer's good-faith reliance [but] a court is never obligated to decide the questions in that order and can address the officer's good faith without passing on the warrant directly."). The Court continues then, to an analysis of the good-faith exception.

### E. Good-Faith Exception

The Government argues that even if there are problems with the judge's probable cause finding, the good-faith exception applies to validate the search and permit the evidence seized to be used at trial. The Supreme Court has established a good-faith exception to the exclusionary rule that precludes suppression of evidence when law enforcement acts in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. *United States v. Leon*, 468 U.S. 897, 922 (1984). The exception supports the public's interest in admitting all relevant and reliable evidence and the policy of deterring police misconduct. *Nix v. Williams*, 467 U.S. 431, 443 (1984). "At its core, *Leon* is about encouraging responsible and diligent police work." *United States v. Lickers*, 928 F.3d 609, 620 (7th Cir. 2019).

The determination of reasonableness, and therefore good faith, is an objective inquiry. *Leon*, 468 U.S. at 922. Although it is the Government's burden to establish that the officer was acting in objective good faith, an officer's decision to obtain a warrant is prima facie evidence of his good faith. *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002). Thus, the presumption arises that an officer with a warrant was acting in good faith, and the defendant's burden is to rebut that presumption. *Edmond v. United States*, 899 F.3d 446, 453 (7th Cir. 2018). The burden to show unreasonable reliance on a warrant is heavy by design. *See Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). A magistrate or judge is, moreover, typically far more qualified than a police

officer to decide whether probable cause exists, *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986), and so an officer "cannot ordinarily be expected to question a judge's probable cause determination," *Lickers*, 928 F.3d at 619. It is "no small feat" to overcome the presumption of good faith. *Lickers*, 928 F.3d at 619.

> For this reason, to meet his burden, Hueston must establish one of four situations:
>
> > (1) the affiant misled the magistrate with information the affiant knew was false or would have known was false but for the affiant's reckless disregard for the truth; (2) the magistrate wholly abandoned the judicial role and instead acted as an adjunct law-enforcement officer; (3) the affidavit was bare boned, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant was so facially deficient in particularizing its scope that the officers could not reasonably presume it was valid.

*United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020) (quoting *Leon*, 468 U.S. at 923).

In this case, Hueston has not rebutted the presumption of good faith, partially for the reasons discussed above. This Court has already rejected Hueston's contention that Detective Ross intentionally or recklessly misled the judge. The Court also finds that, even if the affidavit did not establish probable cause, the affidavit, while flawed in some ways, is not so plainly deficient that a reasonably trained officer would have known that the affidavit failed to establish probable cause.

Finally, Detective Ross' objective good faith is solidified by his decision to consult the prosecuting attorney. "Consulting with the State's Attorney or similar prosecutorial officer certainly is one step a responsible and diligent officer can take, and such consultation is, in many respects, exactly what *Leon*'s good-faith exception expects of law enforcement." *Matthews*, 12 F.4th at 656. In *Matthews,* the Seventh Circuit noted it has "repeatedly credited an officer's choice to confer with an attorney before seeking a warrant as evidence of good faith." *Id.* Before seeking the warrant, Detective Ross testified that he consulted the prosecutor, discussed the information he received from the tipster as well as the other information, the prosecutor reviewed the affidavit

13

he had drafted, and was satisfied that it supported probable cause. Given this other indicium of good faith, the Court finds that, even though the probable cause determination is suspect, *Leon* would insulate the fruits of the search from suppression.

## **CONCLUSION**

For the reasons above, Defendant's Motion to Suppress (ECF No. 20) is DENIED. The Court shall set this matter for trial by separate minute entry.

SO ORDERED on May 10, 2022

                                            s/ Holly A. Brady
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT